Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE BEAVER, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>EVRY JEWELS INCORPORATED,<br><br>    *Defendant*. | Case No. 4:24-cv-06215<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1

**Table of Contents**

2   I.    Introduction. ........................................................................................................ 1

3   II.   Parties. ............................................................................................................... 4

4   III.  Jurisdiction and Venue. ...................................................................................... 4

5   IV.   Facts. .................................................................................................................. 5

6         A.    Defendant's fake prices and fake discounts. ............................................. 5

7         B.    Defendant's advertisements are unfair, deceptive, and unlawful. ............. 12

8         C.    Defendant's advertisements harm consumers. .......................................... 13

9         D.    Plaintiff was misled by Defendant's misrepresentations. ......................... 14

10        E.    Defendant breached its contract with and warranties to Ms. Beaver and the putative

11              class. ....................................................................................................... 16

12        F.    No adequate remedy at law. ..................................................................... 17

13  V.    Class action allegations. ...................................................................................... 17

14  VI.   Claims. ............................................................................................................... 19

15        First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§

16        17500 & 17501 et. seq. ....................................................................................... 19

17        Second Cause of Action: Violation of California's Consumer Legal Remedies Act ............ 21

18        Third Cause of Action: Violation of California's Unfair Competition Law ......................... 23

19        Fourth Cause of Action: Breach of Contract ....................................................................... 25

20        Fifth Cause of Action: Breach of Express Warranty ........................................................... 26

21        Sixth Cause of Action: Quasi-Contract ............................................................................... 26

22        Seventh Cause of Action: Negligent Misrepresentation ...................................................... 27

23        Eighth Cause of Action: Intentional Misrepresentation ...................................................... 28

24  VII.  Relief. ................................................................................................................. 29

25  VIII. Demand for Jury Trial. ......................................................................................... 29

26

27

28

## I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.    Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

7.      So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendant Evry Jewels Incorporated ("Defendant" or "Evry Jewels") sells and markets jewelry products and accessories online through the Evry Jewels website, www.evryjewels.com.

9.      On its website, Defendant lists prices and advertises purported time-limited discounts from those listed prices.  These include "LIMITED TIME" discounts offering "X% off Sitewide." Defendant purports that sales are close to ending by claiming that they subsist "ONLY WHILE SUPPLIES LAST!".  Defendant also advertises that its Products have a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font.  *See* these examples:





10.     Far from being time-limited, however, Defendant's discounts are *always* available. As a result, everything about Defendant's price and purported discount advertising is false.  The list prices Defendant advertises are not actually Defendant's regular prices (the prices it usually charges), because Defendant's Products are *always* available for less than that.  The purported

discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all, because customers can *always* buy Defendant's Products at the discount price. Nor are the purported discounts "OFF" for a "LIMITED TIME" or "ONLY WHILE SUPPLIES LAST"—quite the opposite, they are always available.

11.     As described in greater detail below, Ms. Beaver bought Products from Defendant from its website, www.evryjewels.com. When Ms. Beaver made her purchase, Defendant advertised that a sale was going on, and so Defendant represented that the Products Ms. Beaver purchased were being offered at a steep discount from its purported regular price that Defendant advertised in strikethrough font. And based on Defendant's representations, Ms. Beaver believed that she was purchasing Products whose regular price and market value were the purported list price that Defendant advertised, and that she was receiving a substantial discount. These reasonable beliefs are what caused Ms. Beaver to buy from Defendant when she did.

12.     In truth, however, the representations Ms. Beaver relied on were not true. The purported list prices were not the true regular prices, the purported discounts were not the true discounts. Had Defendant been truthful, Ms. Beaver and other consumers like her would not have purchased the Products, or would have paid less for them.

13.     Ms. Beaver brings this case for herself and the other customers who purchased Defendant's Products.

**II.     Parties.**

14.     Plaintiff Katie Beaver is domiciled in Danville, California.

15.     The proposed class includes citizens of every state.

16.     Defendant Evry Jewels Incorporated is a Canadian corporation with its principal place of business at 95 Boulevard Hymus, Pointe-Claire, Quebec H9R 1E2, Canada.

**III.     Jurisdiction and Venue.**

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant.  Defendant does business in California.  It advertises and sells its Products in California, and serves a market for its Products in California.  Due to Defendant's actions, its Products have been marketed and sold to consumers in California, and harmed consumers in California.  Plaintiff's claims arise out of Defendant's contacts with this forum.  Due to Defendant's actions, Plaintiff purchased Defendant's Products in California, and was harmed in California.

19.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state.  Defendant advertises and sells its Products to customers in this District, serves a market for its Products in this District, and Plaintiff's claims arise out of Defendant's contacts in this forum.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here.

20.     <u>Divisional Assignment</u>.  This case should be assigned to the San Francisco/Oakland division.  *See* L.R. 3-2(c).  A substantial part of the events giving rise to the claims occurred in Danville, California.

## IV.    Facts.

### A.    Defendant's fake prices and fake discounts.

21.     Defendant Evry Jewels distributes, markets, and sells jewelry products and accessories.  Defendant sells its Products directly to consumers through its website, www.evryjewels.com.

22.     On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

23.     At any given time, on its website, Defendant advertises steep discounts on its Products.  These discounts always offer "X%" off sitewide.  Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount "off" of the prices that Defendant usually charges for its Products.  In truth, these discounts run in perpetuity. And it advertises these discounts extensively: on an attention-grabbing banner on every webpage of its website, on the products listing pages, and on the individual product pages for each Product. It

advertises them by touting "X% off"; and by advertising list prices in strikethrough font next to lower, purported discount prices.  *See* these example screenshots:



*Captured on February 5, 2021*



*Captured on September 9, 2021*



*Captured on February 4, 2022*



*Captured on August 24, 2022*



*Captured on April 1, 2023*

*Captured on November 29, 2023*



*Captured on June 18, 2024*



*Captured on June 18, 2024*

24.     To confirm that Defendant always offers discounts off purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1]  That investigation confirms that Defendant has persistent sales.  For example, nineteen randomly selected screenshots of Defendant's website, www.evryjewels.com, were collected from the Internet Archive's Wayback Machine, from the 2023-2024 period.  One hundred percent of the 19 randomly selected screenshots of Defendant's website, captured on the Wayback Machine, displayed a purportedly limited sitewide discount.

25.     Reasonable consumers do not realize the fake nature of the sale.  It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale.  Consumers do not have any reason to go back to the website day after day to discover that there is still a sale.  And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale.  Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

26.     In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

27.     For example, on December 21, 2023, Defendant advertised a purported limited sale of "80% OFF SITEWIDE" on www.evryjewels.com.  As part of this discount, Defendant listed purported regular prices in strikethrough font.  For example, Defendant represented that the Double Cross Me Necklace had a regular list price of $69.00 with a discount price of $13.80:

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

*Captured on December 21, 2023*

28.     But the truth is, the Double Cross Me Necklace's listed regular price of $69.00 is not its regular price.  Instead, the purported "regular price" is always changing, with the discounted price fluctuating as well (*e.g.*, on July 25, 2023, Evry Jewels advertised an 80% off sitewide sale with the necklace originally priced at $77.00 and a discounted price of $15.41.  On June 18, 2024, Defendant advertised an 85% off sitewide sale but the original price of the necklace was $85.00 and the discounted price was $12.75).The customer does not receive the advertised discount by making a purchase during the purported sale.

29.     Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products if they make a purchase during the limited-time promotion.  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y; and they will get a discount.  This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same Product later.

30.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices are Defendant's regular prices, and its former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect).  In other words,

reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers usually have to pay for Defendant's goods, formerly had to pay for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

31.    Reasonable consumers also reasonably believe that the list prices Defendant advertises represent Defendant's regular prices, and the true market value of the Products, and that they are the prevailing prices for those Products.  Reasonable consumers also believe that they are receiving reductions from Defendant's regular prices in the amounts advertised.  In truth, however, Defendant *always* offers discounts off the list prices it advertises.  As a result, everything about Defendant's price and purported discount advertising is false.  The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are *always* available for less than that, and customers did not have to formerly pay that amount to get those items.  The purported discounts Defendant advertises are not the true discount the customer is receiving.  Nor are the purported discounts time limited—quite the opposite, they are always available.

**B.    Defendant's advertisements are unfair, deceptive, and unlawful.**

32.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

33.    Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

34.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or

misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

35.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," such as making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," including ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

36.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

37.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, not its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C.     Defendant's advertisements harm consumers.**

38.     Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products; that these are former prices that Defendant sold its Products at before introducing its sitewide discount.

39.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

40.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are purchasing a product with a higher regular price and/or market value at a substantial discount.

41.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[2]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[3]

42.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[4]

43.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**D.     Plaintiff was misled by Defendant's misrepresentations.**

44.     On February 2, 2022, Ms. Beaver purchased a gold Give me the Signs (222) Ring, a pair of silver Omw Earrings, and a silver Link Up Necklace from Defendant's website, www.evryjewels.com. She made this purchase while living in Danville, California.  The website represented that the Give me the Signs (222) Ring had a regular price, but was on sale for a discounted price of $16.90 plus tax, that the Omw Earrings had a regular price, but was on sale for a

---

[2] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[3] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[4] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

discounted price of $18.85 plus tax, and that the Link Up Necklace had a regular price, but was on sale for a discounted price of $16.25 plus tax.  Defendant represented that Ms. Beaver was receiving a discount for her items that she ordered.  Ms. Beaver's email confirmation represented that Ms. Beaver's discount was $10.00 with a total discounted price of $42.00 plus tax.

45.    On November 24, 2023, Ms. Beaver purchased a silver Effortless Ring, a silver Dotted Ring, a white Pearly Ring, a silver Baby Link Up Bracelet, a silver Linked To You Bracelet, and silver Itty Bitty Hoops from Defendant's website, www.evryjewels.com.  She made this purchase while living in Danville, California.  The website represented that the Effortless Ring had a regular price, but was on sale for a discounted price of $4.70 plus tax, that the Dotted Ring had a regular price, but was on sale for a discounted price of $4.90 plus tax, that the Pearly Ring had a regular price, but was on sale for a discounted price of $4.70 plus tax, that the Baby Link Up Bracelet had a regular price, but was on sale for a discounted price of $4.10 plus tax, that the Linked To You Bracelet had a regular price, but was on sale for a discounted price of $4.10 plus tax, and that the Itty Bitty Hoops had a regular price, but was on sale for a discounted price of $4.10 plus tax. Defendant represented that Ms. Beaver was receiving a discount for her items that she ordered.  Ms. Beaver's email confirmation represented that Ms. Beaver's total discounted price was $26.60 plus tax.

46.    Defendant represented that the Products had a certain regular price and that Ms. Beaver was receiving a substantial discount for the items that she purchased.

47.    Ms. Beaver read and relied on Defendant's representations on Defendant's website, specifically that the Products were being offered at a discount for a limited time and that they had higher regular and usual prices, and that she would be receiving a price reduction by buying now. Based on Defendant's representations described above, Ms. Beaver reasonably understood that the Products she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published list prices, that these published list prices were the market value of the Product that she was buying; that she was receiving the advertised discount and a price reduction as compared to the regular price, and that the advertised discount was only available for a limited time (during the sitewide promotion).  She would not have made the purchase if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discount.

48.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Evry Jewels Products from Defendant again in the future if she could feel sure that Defendant's list prices accurately reflected Defendant's regular prices and former prices, and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's list prices, discounts, and sales are not false or deceptive.  For example, while she could wait to see if the sale is actually limited, doing so could result in her missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Products she would like to purchase.

**E.     Defendant breached its contract with and warranties to Ms. Beaver and the putative class.**

49.     When Ms. Beaver and other members of the putative class purchased and paid for the Products they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed at the time that they made a purchase.  The offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

50.     When Ms. Beaver made a purchase from Defendant, Ms. Beaver and Defendant entered a contract.

51.     Defendant's website lists the regular prices—the market values—of the items that Defendant promised to provide.  And Defendant agreed to provide a discount equal to the difference between the regular prices, and the discounted prices paid by Ms. Beaver and putative class members.  Defendant also warranted that the regular price and market value of the Products Ms. Beaver purchased was the advertised list price and warranted that Ms. Beaver was receiving a specific discount on those Products.

52.     The regular price and market value of the items Ms. Beaver and the putative class members would receive, and the amount of the discount they would be provided off the regular price of the item, were specific and material terms of the contracts.  They were not only affirmations of fact about the Products and but also promises relating to the goods.

53.     Ms. Beaver and other members of the putative class performed their obligations under the contracts by paying for the items they purchased.

54.     Defendant breached its contract by failing to provide Ms. Beaver and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.  Defendant also breached warranties for the same reasons.

### F.      No adequate remedy at law.

55.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

56.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's FAL claim under section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

57.     In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain that obtaining a refund in equity.

58.     Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

### V.      Class action allegations.

59.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Evry Jewels Products advertised at a discount on Defendant's website.

- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Evry Jewels Products advertised at a discount on Defendant's website.

60.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

61.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

62.     Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

63.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

1

*Typicality & Adequacy*

2     64.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff

3 purchased the Evry Jewels Products advertised at a discount from Defendant.  There are no conflicts

4 of interest between Plaintiff and the class.

5     *Superiority*

6     65.    A class action is superior to all other available methods for the fair and efficient

7 adjudication of this litigation because individual litigation of each claim is impractical.  It would be

8 unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits,

9 every one of which would present the issues presented in this lawsuit.

10  **VI.    Claims.**

11                    **First Cause of Action:**

12  **Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

13                 **(By Plaintiff and the California Subclass)**

14     66.    Plaintiff incorporates each and every factual allegation set forth above.

15     67.    Plaintiff brings this cause of action on behalf of herself and members of the California

16 Subclass.

17     68.    Defendant has violated sections 17500 and 17501 of the Business and Professions

18 Code.

19     69.    Defendant has violated, and continues to violate, section 17500 of the Business and

20 Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass

21 members.

22     70.    As alleged more fully above, Defendant advertises steep discounts on its Products.

23 Defendant does this, for example, by offering "$X" or "X%" off sitewide, by running these

24 discounts in perpetuity, and by identifying the supposed savings that customers are supposedly

25 receiving by using list prices in strikethrough font by lower, purported discount prices.

26     71.    Furthermore, Defendant advertises former prices along with discounts.  Defendant

27 does this, for example, by crossing out a higher price (*e.g.*, ~~$85.00~~) and displaying it by a lower,

28 discounted price.  Reasonable consumers would understand prices denoted as regular prices from

which "limited" sitewide discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the limited discount went into effect.

72.    The prices advertised by Defendant are not Defendant's regular prices.  In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the product in question), because there is always a heavily-advertised promotion ongoing entitling consumers to a discount.  Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are time-limited are false and misleading too.

73.    In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising.  As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

74.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Evry Jewels Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

75.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Evry Jewels Products.

76.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

77.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Evry Jewels Products if they had known the

truth, and/or (b) they overpaid for the Products because the Evry Jewels Products were sold at a price premium due to the misrepresentations.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff and the California Subclass)**

78.     Plaintiff incorporates each and every factual allegation set forth above.

79.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

80.     Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

81.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

82.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

83.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

84.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

85.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

86. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

87. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Labor Day Sale," when in fact the sale is ongoing and not limited to Labor Day).

88. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

89. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Evry Jewels Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

90. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Evry Jewels Products.

91. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

92. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Evry Jewels Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

93. Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Beaver, on behalf of herself and all other members of the subclass, seeks injunctive relief.

94.     CLRA § 1782 NOTICE.  On August 15, 2024, a CLRA demand letter was sent to Defendant's Canada headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  Defendant does not have a California headquarters.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

95.     A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (by Plaintiff and the California Subclass)

96.     Plaintiff incorporates each and every factual allegation set forth above.

97.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

98.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

99.     Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.  In addition, Defendant engaged in unlawful conduct by violating the FTCA.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements.  15 U.S.C. § 45(a)(1).  As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA.  16 C.F.R. § 233.1, § 233.2.

*The Deceptive Prong*

100.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

101.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

102.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

103.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

104.    Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

105.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

106.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

107.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

108.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Evry Jewels Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

109.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Evry Jewels Products.

110.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

111.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Evry Jewels Products if they had known that

they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

### Fourth Cause of Action:

### Breach of Contract

### (by Plaintiff and the Nationwide Class)

112.    Plaintiff incorporates each and every factual allegation set forth above.

113.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

114.    Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

115.    The contracts provided that Plaintiff and class members would pay Defendant for the Products purchased.

116.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website.  They also required that Defendant provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

117.    The specific discounts were a specific and material term of each contract.

118.    Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

119.    Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount.  Defendant did not provide the discount that it had promised.

120.    Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters, on August 15, 2024.

121.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

### Fifth Cause of Action:

### Breach of Express Warranty

### (by Plaintiff and the Nationwide Class)

122.    Plaintiff incorporates each and every factual allegation set forth above.

123.    Plaintiff brings this cause of action on behalf of herself and members of the Nationwide Class.

124.    Defendant, as the marketer, distributor, supplier, and/or seller of the Evry Jewels Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

125.    This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

126.    In fact, the Evry Jewels Products' stated market value was not the prevailing market value.  Thus, the warranty was breached.

127.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on August 15, 2024.

128.    Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Evry Jewels Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

### Sixth Cause of Action:

### Quasi-Contract

### (by Plaintiff and the Nationwide Class)

129.    Plaintiff incorporates each and every factual allegation in paragraphs 1-48 and 55-65 above.

130.    Plaintiff brings this cause of action in the alternative to her Breach of Contract claim (Claim IV) on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

131.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Evry Jewels Products and to pay a price premium for these Products.

132.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

133.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

134.    Plaintiff and the class seek restitution, and in the alternative, rescission.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

135.    Plaintiff incorporates each and every factual allegation set forth above.

136.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

137.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

138.    These representations were false.

139.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

140.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

141.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Evry Jewels Products.

142.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

143.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Evry Jewels Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

### Eighth Cause of Action:

### Intentional Misrepresentation

### (by Plaintiff and the California Subclass)

144.    Plaintiff incorporates each and every factual allegation set forth above.

145.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

146.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

147.    These representations were false.

148.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

149.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

150.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Evry Jewels Products.

151.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

152.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Evry Jewels Products if they had

known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**VII.     Relief.**

153.    Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**VIII.   Demand for Jury Trial.**

154.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: September 3, 2024                                 Respectfully submitted,

By: */s/ Christin Cho*

Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*